/s/ Randal S. Mashburn
Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 5/14/2014



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re:<br>MURRAY OWEN WILHOITE, JR.,<br>    Debtor. | )<br>)<br>)<br>)<br>) | Case Number: 3:11-06339<br>Chapter 7<br>Randal S. Mashburn |
| MURRAY OWEN WILHOITE, JR.,<br>    Plaintiff<br>v.<br>EVA MARIE LEMAH, TRUSTEE<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | Adversary No.: 14-90008 |

## MEMORANDUM OPINION
## REGARDING DEFENDANT'S MOTION TO DISMISS

Murray Wilhoite is clearly unhappy with the results of his bankruptcy. He is upset with his prior attorneys, his estranged wife, previous court rulings, and the entire bankruptcy system. He has currently singled out his Chapter 7 bankruptcy trustee as the object of his discontent. Regardless of his frustrations, he has failed to state a cause of action against the trustee that would allow this adversary proceeding to go forward. Therefore, the trustee's motion to dismiss will be granted.

Mr. Wilhoite has been acting *pro se* in this adversary proceeding, as he has throughout much of his bankruptcy case and in the course of several other lawsuits, contested matters, and appeals. His overriding theme in all of his pleadings is that he feels he lost his business as a result of a combination of negligence, improper conduct, and improvident decisions by professionals and other participants in the bankruptcy system.

His latest pleadings attempt to construct a complaint out of the same hodgepodge of claims and to place blame on the trustee, Eva Marie Lemeh. Despite the Court allowing an amended complaint after identifying obvious defects in the original complaint, the revised complaint still fails to meet applicable legal standards.

1

Case 3:14-ap-90008    Doc 22    Filed 05/14/14    Entered 05/14/14 12:35:27    Desc Main
Document      Page 1 of 17

For the reasons stated herein, the Court is contemporaneously entering an order granting the trustee's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court also incorporates by reference its prior Order dismissing certain counts of the original complaint. [14-90008, Docket no. 14]. The following constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

## FACTUAL BACKGROUND

Many of the facts relating to Mr. Wilhoite's Chapter 7 case have been previously detailed in the Court's Memorandum Opinion found at 2014 WL 505171 (Bankr. M.D. Tenn. Feb. 7, 2014) and CMECF, Adv. No. 13-90362, Docket No. 27 and are restated and supplemented here based only upon the facts accepted as true from Mr. Wilhoite's amended complaint and the Court's judicial notice of the Court docket and filings during the bankruptcy proceedings.[1]

Mr. Wilhoite filed a chapter 11 bankruptcy through his first attorney in April of 2011. Mr. Wilhoite's original statements and schedules listed a one-half interest in three separate pieces of real estate and a fee simple interest in three other properties. [11-03499, Docket no. 12]. There was no mention at all on his Schedule B of an ownership interest in Bren Instruments, Inc. – the company that ultimately became the focus of many of Mr. Wilhoite's allegations. That chapter 11 case was dismissed for failure to appear at the meeting of creditors in May 2011.

Mr. Wilhoite's first attorney filed a motion to set aside the dismissal [11-03499, Docket no. 18], but was killed in a plane crash before that hearing was held. Mr. Wilhoite hired new counsel to represent him. Instead of proceeding on the motion to set aside the dismissal, Mr. Wilhoite's new counsel withdrew his motion [11-03499, Docket no. 28], and the case remained dismissed and was closed. [11-03499, Docket no. 36].

In June of 2011, Mr. Wilhoite filed a new chapter 11 petition accompanied by new statements and schedules which claimed a different ownership interest in one of the properties identified in the earlier bankruptcy, and omitted another property

---

[1] The Court takes judicial notice of the prior pleadings in the main case and related adversary proceedings. The filings in the bankruptcy case and adversary proceedings are matters of public record and therefore the Court taking judicial notice of the bankruptcy filings does not convert this motion into one for summary judgment. *Buck v. Thomas M. Cooley Law Sch.,* 597 F.3d 812, 816 (6th Cir.2010); *Malin v.* JPMorgan, 860 F. Supp. 2d 574 (E.D. Tenn. 2012); *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997); *Signature Combs, Inc. v. United States,* 253 F. Supp.2d 1028, 1041 n. 5 (W.D. Tenn. 2003).

that had been listed in the first bankruptcy case. [11-06339, Docket no. 1]. Although there were changes in the schedule of assets, there was still no mention of an ownership interest in Bren Instruments Inc. on the debtor's Schedule B. However, Mr. Wilhoite did reference a 25% stock interest in Bren in his Statement of Financial Affairs in response to Question 21 about debtor partnerships.

In August of 2011, the United States Trustee filed a motion to convert the second bankruptcy case to Chapter 7. The allegations in the motion included the following key points:

> 4. Immediately before filing his first Chapter 11 case, the Debtor transferred three parcels of real property to his non-filing spouse. The non-filing spouse also transferred a parcel of real property to the Debtor. These transfers were not reflected on the bankruptcy schedules filed in the Debtor's first bankruptcy case.
>
> 5. The Debtor is the President of a corporation known as Bren Instrument, Inc. ("Bren Instruments"), which is located in Franklin, Tennessee. Bren Instruments is in the business of producing stencil machines, sign and decal systems, and stencil related materials for industrial and military customers. The Debtor placed a total entity value of $498,095.00 on Bren Instruments on the Form B26 filed in this bankruptcy case (Docket No. 27).
>
> 6. During the Meeting of Creditors, the Debtor testified that he owns 25% of Bren Instruments, that his two brothers each own 25% of Bren Instruments, and that his non-filing wife owns 25% of Bren Instruments. However, the Debtor also testified during the Meeting of Creditors that he has filed numerous corporate tax returns on behalf of Bren Instruments, which reflect that his non-filing spouse, Brenda Wilhoite, owns 51% of Bren Instruments. The value of the bankruptcy estate will largely depend on the ownership interest owned by Mr. Wilhoite.
>
> 7. As President, the Debtor controls the funds held by Bren Instruments. The Debtor used a check from Bren Instruments to pay the attorneys fees related to this bankruptcy case. Payment of individual attorneys fees do not appear to be a normal corporate expense of Bren Instruments. The value of the bankruptcy estate will also depend on the cash flow of Bren Instruments.

[11-06339, Docket no. 40].

The debtor, through counsel, initially filed an objection to the motion to convert and requested a hearing. [11-06339 Docket no. 46]. However, an agreed

order was entered in September 2011 converting the case to Chapter 7. The order was signed with approval by debtor's counsel and the United States Trustee. [11-06339 Docket no. 57].

Mr. Wilhoite's counsel subsequently moved to withdraw from representation because "the attorney client relationship has eroded because of differences in courses of action to be followed in the case," and an order was entered allowing withdrawal. Mr. Wilhoite objected to a few motions *pro se* regarding the trustee's right to hire certain professionals, but at that point Mr. Wilhoite did not complain about the conversion of his case to Chapter 7. [11-06339, Docket nos. 69-110].

The Chapter 7 trustee filed a motion to compel the debtor to file conversion statements and schedules in late 2011. [11-06339, Docket no. 103]. Mr. Wilhoite then hired a third attorney who filed new schedules. These schedules indicated that Mr. Wilhoite held a fee simple interest in one of the pieces of real estate identified in the prior filings and that he was a joint tenant on various other properties. Mr. Wilhoite also listed himself as a 49% owner in Bren Instruments on Schedule B. [11-06339, Docket no. 110].

Mr. Wilhoite's third attorney filed a motion to withdraw as counsel a few months after being hired, alleging that "the attorney client relationship has eroded because of a breakdown of communications between attorney and client and because of differences in courses of action to be followed in the case." [11-06339, Docket no. 154]. She too was allowed to withdraw.

Mr. Wilhoite then filed various pleadings *pro se*: "Notice of Objection to Motion of Trustee to Pay Fees of Agent" [11-06339, Docket no. 156] (objecting to the source of funds to pay the trustee's agent); "Motion to Refer Case for Alternative Dispute Resolution" [11-06339, Docket no. 158] (asking the Court to refer this case to an ADR Program because the trustee had breached contracts of Bren Instruments, Inc. by removing key employees); and "Motion to Compel the Trustee to Examine the Acts of the Debtor" [11-06339, Docket no. 187] (asking the court to examine if grounds exist for dismissal with or without a discharge and stating he disagreed with the trustee's effort to sell and partition property that Mr. Wilhoite owned with others). None of these motions were granted.

On April 10, 2012, SunTrust Bank filed an adversary proceeding alleging that the debt owed to it was nondischargeable due to Mr. Wilhoite's fraud. [Adv. Pro. No. 12-90201]. The complaint alleged that Mr. Wilhoite pledged real property as collateral for a loan when the property was really owned by his father. SunTrust obtained a nondischargeable judgment for fraud against Mr. Wilhoite on an

4

unopposed motion for summary judgment in the amount of $1,393,418.03 as of December 26, 2012. [Adv. Pro. No. 12-90201, docket no. 28].

Fidelity National Title Insurance Company, also involved in the SunTrust loan transaction, filed its own adversary proceeding against Mr. Wilhoite for fraud. Fidelity received a default judgment against Mr. Wilhoite, who failed to timely respond. Mr. Wilhoite's debt to Fidelity in the amount of $394,914.16 was held nondischargeable for fraud and/or willful and malicious injury in March of 2013. [Adv. Pro. No. 12-90274, Docket no. 40].

On April 30, 2012, the trustee filed a motion to sell Mr. Wilhoite's 49% ownership in Bren Instruments Inc. [11-06339, Docket no. 216]. Mr. Wilhoite was sent notice of the sale but did not object, and an order was entered on June 27, 2012, approving the sale. [11-06339, Docket no. 234]. This order was not appealed. No motion to set aside the sale order was filed.

In the spring of 2013, Mr. Wilhoite became active again in the Chapter 7 case, having taken no significant action since mid-2012. In April of 2013, he filed a pleading titled "Affidavit of Murray Owen Wilhoite Jr. in Support of Complaint" in which he sets forth what he perceived were the problems in his Chapter 7 case. Specifically, he accused the trustee of shutting down Bren, firing its employees and diminishing the assets of the bankruptcy estate. [11-06339, Docket no. 291]. No action was taken by the Court on this affidavit, as none was requested.

In August 2013, Mr. Wilhoite sought to dismiss the bankruptcy proceeding, all associated adversary proceedings, set aside all judgments and orders, and to "expunge the record" of the debtor. [11-06339, Docket no. 302]. This motion was opposed by the trustee and Fidelity National Title Insurance Company. After a hearing, the Court denied the motion, [11-06339, Docket no. 313], and Mr. Wilhoite appealed.

While the appeal of the denial of Mr. Wilhoite's unusual "expungement" motion was pending, he filed an adversary proceeding against SunTrust Bank, Fidelity National Title Insurance Company, and Realty Title and Escrow Company, Inc. alleging he was owed damages of $1.6 million plus punitive damages for the tortious conduct and breach of contract by the defendants. [Adv. Pro. No. 13-90362]. The Court's Memorandum Opinion and Order dismissing Mr. Wilhoite's lawsuit for lack of standing can be found at 2014 WL 505171 (Bankr. M.D. Tenn. Feb. 7, 2014). Just prior to the Court's decision, the Bankruptcy Appellate Panel dismissed Mr. Wilhoite's appeal of the earlier decision. [11-06339, Docket no. 336].

## LAWSUIT AGAINST THE TRUSTEE

After Mr. Wilhoite's effort to undo all of the prior actions and "expunge" his record was unsuccessful, Mr. Wilhoite filed the present adversary proceeding against the trustee on January 6, 2014. [Adv. Pro. No. 14-90008]. Mr. Wilhoite's original complaint alleged three causes of action: (1) conversion; (2) negligence, and (3) breach of fiduciary duty.

The trustee filed a motion to dismiss, and a hearing was held on April 1, 2014. The Court dismissed Counts (1) and (2). [14-90008, Docket no. 14]. As for the conversion allegations, the Court found that some of the allegations made by Mr. Wihoite involved claims that would belong to a third party – Bren Instruments – and not Mr. Wilhoite. To the extent that the property allegedly "converted" did, in fact, belong to Mr. Wilhoite pre-petition, that property became property of the bankruptcy estate, and the trustee as the lawful holder of ownership rights in property of the estate could not be liable for "converting" the property. In other words, since Mr. Wilhoite was no longer the owner of the property, he had no legal basis to claim that the trustee had converted his property.

The Court also found that, with regard to the allegations that the trustee's actions in administering the estate assets were negligent, the trustee is protected by absolute quasi-judicial immunity. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 (6th Cir. 1982). While there is a split among the circuits regarding the extent of trustee immunity and whether alleged negligence alone is sufficient to state a cause of action, the Sixth Circuit clearly falls into the camp that requires much more than negligence to be asserted against a trustee to survive a motion to dismiss.[2] The original complaint had insufficient allegations to support a negligence claim even if immunity did not attach – but the Sixth Circuit's position on immunity made it clear that an amendment could not solve the pleading problem as to the negligence count of the complaint.

As for the third count of the original complaint, the Court likewise found that the allegations of breach of fiduciary duty were insufficient to state a cause of action. However, since that claim was deficient based on the facts alleged but could

---

[2] The Sixth Circuit held in *Weaver*, that a bankruptcy trustee is only liable for injuries arising from intentional as opposed to negligent conduct. *Id.* at 461-62. The Seventh and Tenth Circuits have held the same. *In re Chicago Pacific Corp.,* 773 F.2d 909, 915 (7th Cir.1985); *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1982). The Second and Ninth Circuits have concluded that a trustee is not entitled to immunity even with regard to mere negligent non-discretionary acts. *In re Gorski,* 766 F.2d 723, 727 (2d Cir.1985); *In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983) . The Fifth Circuit has taken an intermediate approach finding immunity applicable unless a trustee's conduct was grossly negligent or intentional. *In re Smyth*, 207 F.3d 758 (5th Cir. 2000).

conceivably pass muster if the pleading included more specific facts to support the conclusions, the Court advised Mr. Wilhoite that he would be given an opportunity to amend Count 3 to plead a claim for breach of fiduciary duty.

Mr. Wilhoite filed an amended complaint on April 8, 2014. [Adv. Proc. No. 14-90008, Docket no. 15], and the trustee renewed her motion to dismiss [Adv. Proc. No. 14-90008, Docket no. 16]. Mr. Wilhoite's amended complaint alleges a number of acts and omissions on the part of the trustee that Mr. Wilhoite contends demonstrate "willful and deliberate" breaches of her fiduciary duty. Mr. Wilhoite states that the trustee:

- made a conscious effort to "prevent receiving factual information which would have changed the basic premis[e] and thus mitigated the devastation rendered."

- arranged with [estranged wife] Brenda R. Wilhoite that the interest of the debtor in Bren Instruments, Inc. would be sold to her, for an amount far below its actual value.

- failed to investigate the financial condition of the debtor.

- failed to offer cooperation with the debtor to understand the intent of the debtor when the case was converted.

- failed to seek assistance from knowledgeable professionals available to her.

- failed to use reasonable methods to determine the exact nature, condition and value of the debtor's assets.

- authorized an unreasonable search and seizure of property.

- displaced debtor from his residence and his source of income.

- "colluded with parties to diminish the value of the assets of the debtor by ceasing operation of the business of the debtor which required continuing, uninterrupted operation and 'authorization by the court.'"

These allegations in the amended complaint, according to Mr. Wilhoite, entitle him to damages of $6,480,000.00, plus punitive damages and costs. The trustee asserts that Mr. Wilhoite's amended complaint still fails to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6).

7

# DISCUSSION

## I. Fed.R.Civ.P 12(b)(6) Dismissal Standards

As the Sixth Circuit Court of Appeals has explained:

> For a complaint to survive such motions, it must—when the record is construed in the light most favorable to the nonmoving party and when all well-pled factual allegations are accepted as true—contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted). Still, this court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 275–76 (6th Cir. 2010) (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

*D'Abrosio v. Marino*, __ F.3d __, 2014 WL 1243792 (6th Cir. Mar. 27, 2014). In other words, Mr. Wilhoite's amended complaint must allege more than a simple "I claim the trustee intentionally breached her fiduciary duty and I was damaged" — he must allege grounds supporting his assertions. His amended complaint does not.

## II. Elements of the Cause of Action: Breach of Fiduciary Duty

"In the most general sense, a fiduciary duty is the duty to act with due regard for the interests of another. This means a fiduciary 'is bound to exercise good faith and due diligence' in its dealings." *Pagliara v. Johnston Barton Proctor and Rose, LLP*, 708 F.3d 813 (6th Cir. 2013). *McRedmond v. Estate of Marianelli,* 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000). The precise contours of a duty are necessarily a matter of context. *McRedmond,* 46 S.W.3d at 738 (describing the fiduciary duty

8

owed in the corporate context). It is axiomatic that a plaintiff alleging a breach must prove (1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages. *Pagliara*, at 818.

### A. The Existence of a Fiduciary Relationship to the Debtor

Section 704(1) of the bankruptcy code provides that a "trustee shall collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with *the best interests of the parties in interest.*" 11 U.S.C. § 704. "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to debtor." *In re Cormier*, 382 B.R. 377, 410 (Bankr. W.D. Mich. 2008) quoting *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* 151 F.3d 605, 607 (7th Cir.1998) (citing *In re Schultz Mfg. Fabricating Co.,* 956 F.2d 686, 692 (7th Cir.1992)). In other words, the trustee's fiduciary duties are to creditors of the debtor, not the debtor himself, unless he is a "surplus debtor" – that is, if money would be left over for the debtor after all creditors are paid in full. Mr. Wilhoite's various court filings show dramatically conflicting information on this point, ranging from no ownership in Bren Instruments to a sizable minority interest. Also, the values have varied greatly, but none of the information would seem to demonstrate any reasonable possibility that there would be a surplus after payment of creditors.[3] That is

---

[3] Mr. Wilhoite's valuations of Bren Instruments as an operating entity are not only wide ranging, but speculative and self-serving. Even if his ideal valuation of his 25% to 49% ownership interest in Bren were accurate, there is not even a conclusory allegation that the chapter 7 estate would be a surplus estate or that his minority interest in a closely held business would sell for 25% or 49% of Bren Instrument's total worth. The Court need not accept his top valuation as "true" for purposes of this motion to dismiss because this is the latest iteration of valuation which has changed depending upon the circumstances. His interest in Bren was not listed at all in his first Chapter 11 case, and was not listed on Schedule B in his second petition, and his conversion statements and schedules listed his 49% interest as "unknown." In other pleadings, Mr. Wilhoite has listed the total entity value of Bren at $498,095.00 (listing himself as a 25% stakeholder). *See* Case No. 11-06339, Docket no. 27 ("Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate of Murray Owen Wilhoite Jr. Holds a Substantial or Controlling Interest."). On August 23, 2011, Mr. Wilhoite amended his Schedule B again to include a 25% ownership interest in Bren and listed the value of his interest at $124,523.00. His conversion statements and schedules listed him as a 49% stakeholder, but included no valuation. It is a blind leap for the Court to assume that what Mr. Wilhoite once valued at a gross amount of $498,095.00 should now be worth millions of dollars (particularly when his interest could be no higher than 49% of the gross number). In other words, for Mr. Wilhoite to be a surplus debtor, it would require a business value for Bren many times the numbers he used in sworn statements filed with the Court. As *Iqbal* and *Twombly* have held, Mr. Wilhoite's demand for money damages, including his claims that his estate was solvent, must be factually based, non-conclusory, and quantifiable. *See In re AMR Corp.*, 506 B.R. 368 (Bankr. S.D.N.Y. 2014) (citations omitted) (finding "[a]t the pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual,

especially true when one takes into account the sizeable judgments obtained in the dischargeability actions.

However, out of an abundance of caution, the Court will assume that under some conceivable set of circumstances, Mr. Wilhoite could be a surplus chapter 7 debtor entitling him to "party in interest" standing to whom the Chapter 7 trustee owed a fiduciary duty. Even under this very generous stretch of the alleged facts, Mr. Wilhoite's amended complaint fails miserably.

### B. Breach of Fiduciary Duty

Even giving Mr. Wilhoite the benefit of the doubt on pecuniary standing to raise these issues, his amended complaint is filled with little more than criticism of the trustee and unsupported conclusions rather than concrete factual allegations. Upon giving Mr. Wilhoite an additional chance to amend, the Court cautioned Mr. Wilhoite not to waste his time, the trustee's time, or the Court's time unless his breach of fiduciary claim contained sufficient factual detail rather than mere conclusions. Instead, the amended complaint restates all of Mr. Wilhoite's grievances without any factual context but merely adds now that the trustee's actions were all "willful and deliberate."

The primary allegations related to breach of fiduciary duty are that the trustee acted improperly: (1) by not consulting with him (the minority shareholder) about closing down Bren Instruments; (2) by not investigating the circumstances of the conversion of his case to Chapter 7 and understanding he did not want to be in chapter 7 – despite his attorney's signature on an agreed order; and (3) by "collusion with third parties" to diminish the value of Bren Instruments and arranging for Mr. Wilhoite's estranged wife and majority shareholder to buy his interest in Bren Instruments for an artificially low price – and, in the process, also depriving him of his residence and income.

Although couched in different ways throughout the pleadings, his complaints all come down to three key points: Mr. Wilhoite claims the trustee should have figured out that an injustice was occurring by the actions of his former attorney in agreeing to convert his case to Chapter 7; she should have consulted and listened to him about how to deal with his assets; and she should not have sold the business in which he had a minority interest to his estranged wife at what he claims was a below-market price.

---

non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount.").

10

Section 704(a)(1) provides that the trustee shall:

> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

11 U.S.C. § 704. Upon the conversion, the trustee became the owner of ALL of Mr. Wilhoite's non-exempt interests in property wherever located. 11 U.S.C. § 541(a). The trustee, not Mr. Wilhoite, was then charged with collecting and reducing the property to money in as expeditious a manner as possible while acting in the best interest of parties in interest.[4] Assuming Mr. Wilhoite is being considered a party in interest for purposes of this motion to dismiss, he nonetheless has no right to force the trustee to accept his opinions on how his former property should be collected and reduced to money as long as the trustee is acting in the best interest of all parties who have a pecuniary stake in the outcome, and is acting under the applicable statutes and rules.

Certainly, it is normally wise for any trustee to take into account information supplied by the debtor, but each case is different. A trustee is given wide latitude in exercising discretion about the role a debtor can or should play in the liquidation of a bankruptcy estate. For instance, it is not particularly surprising that the opinions of a debtor who has been repeatedly accused of fraud and improper conduct by creditors and the U.S. Trustee would be given less credence than might occur in the typical case. It is not shocking that a debtor who has given conflicting information under oath about his assets and property values would not have the ear of the trustee to the same extent that other debtors might. A trustee must have the ability to consider the likely reliability of any information in light of the context of each case and to act accordingly. In general, the level of cooperation that is warranted between a trustee and debtor is very much case-dependent.[5]

---

[4] *See In re Eagle Enterprises, Inc.*, 237 B.R. 269, 273 (Bankr. E.D. Pa. 1999) (chapter 7 trustee owes a complex set of fiduciary duties to the estate, and chief among the duties is to liquidate the bankruptcy estate at maximum possible value).

[5] There is no question that a Chapter 7 debtor has a duty to cooperate with the trustee, but the Court is unaware of any law, statute or other authority that specifically requires the trustee to "cooperate" with the debtor. The trustee's duty to liquidate and administer for the highest possible value may very well dictate that the trustee consult or otherwise interact with a Chapter 7 debtor, but there is no mandatory provision that the trustee consult a Chapter 7 debtor on his or her opinions, wishes and desires about how an estate should be maximized – particularly when the debtor did not even file an objection to many of the actions he has now included in his complaint. *See In re Morey*, 416 B.R. 364 (Bankr. D. Mass. 2009) (discussing a Chapter 7 debtor's duty to cooperate with a Chapter 7 trustee).

11

In his revised complaint, Mr. Wilhoite peppered his allegations with the words "deliberate" and "willful," but there is no greater substance or specificity than in the original complaint. When the conclusory statements are removed and the allegations are considered without any inflammatory language, what Mr. Wilhoite primarily says is that the trustee should have figured out that his prior attorney made a mistake agreeing to convert his case to a Chapter 7 and that the trustee should have somehow acted in a way to allow him to reorganize despite her duties to liquidate.

The one claim that could give rise to a cause of action for breach of fiduciary duty is the allegation that the trustee somehow conspired with Mr. Wilhoite's estranged wife in connection with the sale of the business – which allowed the estranged wife to move from 51% ownership to complete ownership. If there was even a hint of factual basis to support this conclusion, the case might survive the motion to dismiss. Even after being allowed to amend his complaint, Mr. Wilhoite was unable to assert any facts to support such a serious claim.

When pressed by the Court at the hearing on the motion to dismiss to explain how or why the trustee would intentionally or deliberately undervalue the sale price of the 49% interest or take action to devalue the business, Mr. Wilhoite said he believed the trustee was somehow motivated by a desire for "personal financial gain." He could not explain the why or how of his belief. Assigning this motivation to the trustee further highlights Mr. Wilhoite's lack of understanding of the bankruptcy process. Chapter 7 trustees are given an incentive to maximize returns to creditors by being paid *more* if they bring in more money to the estate to be distributed to creditors, not less. Absent actual fraudulent or illegal conduct, which has not been alleged, there is no benefit to a trustee in selling an asset for less than maximum value. Indeed, quite the opposite is true.

As it relates to the sale of the business, it is also important to recognize that no facts have been alleged to support the proposition that the sale was for less than market value. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Even though the Court gave Mr. Wilhoite, as a *pro se* litigant, the opportunity to amend his pleadings to state specifically how the trustee deliberately violated her fiduciary duty, the best he can apparently come up with is the naked

allegation that the trustee colluded to sell his assets at less than full value, and by closing a business in which he was employed.[6]

Just saying the trustee "colluded" or acted improperly is not enough. The court must "accept as true" the factual allegations in a complaint, but will not be bound by legal conclusions "couched as a factual allegation" or naked assertions "devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). Further, as explained below, Mr. Wilhoite should not be allowed an end run around the sale of his assets (the stock ownership in Bren) under the guise of the trustee's alleged wrongdoing when he did not even object to the sale of those property interests when the trustee sold the 49% interest in Bren.

### C. Proximate Cause of Damages

Even assuming that Mr. Wilhoite has a pecuniary interest, that he managed to show that a fiduciary duty exists, and that such duty was intentionally breached, he cannot show that the trustee's breach was the proximate cause of the damages he seeks. The claim falls short in this regard for several reasons, including basic pleading deficiencies, lack of standing to claim the alleged damages and the preclusive effect of the prior Court order approving the sale of Mr. Wilhoite's business interest.

Mr. Wilhoite claims that he, personally, was damaged by the trustee's intentional breach of her fiduciary duty to the estate leading to:

- Property, Judgments and secured liens. $2,100,000.00;
- Operating equipment, Personal property contained in 8401 property- $980,000.00;
- Value of the company Bren instruments, Inc. $2,000,000.00; and
- Value of income, benefits, cash investments over 17 years $1,500,000.00.

Besides being so vague and ambiguous that the amended complaint fails all fundamental pleading standards, nothing alleged in Mr. Wilhoite's revised

---

[6] Mr. Wilhoite admits in his original complaint and amended complaint that he was the minority owner in Bren Instruments. Since Mr. Wilhoite was a minority owner, so was the trustee when she took possession of Mr. Wilhoite's ownership. Any actions in "closing the company" or securing property of the estate were done in conjunction with the consent of the majority owner, Mr. Wilhoite's estranged wife. Mrs. Wilhoite cooperated with the trustee, and Mr. Wilhoite's displeasure over his estranged wife's decision as the majority owner of Bren Instruments appears to be directed at the trustee.

complaint even touches on how it is the trustee's fault that he has nondischargeability judgments taken against him for fraud. Similarly, no part of his amended complaint asserts that the trustee's alleged breach of fiduciary duty caused "secured liens" to be imposed against the property. Any alleged breach of fiduciary duties by the trustee did not lead to judgments or to secured liens against Mr. Wihoite. He did that all on his own.[7]

Likewise, the alleged damages relative to the personal property and operating equipment bear no relation whatsoever to a breach of fiduciary duty. As the Court held in dismissing the conversion count in the original complaint, the trustee cannot convert property for which she was the rightful holder. The trustee, as part of her statutory duties, was charged with administering these assets that belonged to the estate. To the extent the trustee administered assets that did not belong to Mr. Wilhoite's bankruptcy estate but to a third-party, that third party is the party in interest to complain, not Mr. Wilhoite. To the extent the items were property of the estate, Mr. Wilhoite makes absolutely no factual, legal, or any type of causal connection that the trustee's alleged breach of fiduciary duty caused personal damage to Mr. Wilhoite.[8]

If there is any component of the alleged damages that could conceivably justify the complaint going forward, it would again relate to Mr. Wilhoite's contention that there was a devaluation or undervaluation of his minority interest in Bren Instruments. According to Mr. Wilhoite, the trustee breached her fiduciary duty in closing and selling Bren for under-market value. However, these are arguments he should have made when his interest in Bren was sold.

The trustee gave notice of the motion to sell Mr. Wilhoite's 49% ownership in Bren Instruments on April 30, 2012 – a sale that effectively converted a minority interest in a small business to an ownership interest in much more marketable real

---

[7] SunTrust obtained a nondischargeable judgment for fraud against Mr. Wilhoite on an unopposed motion for summary judgment in the amount of $1,393,418.03 as of December 26, 2012. [Adv. Pro. No. 12-90201, docket no. 28]. Mr. Wilhoite's debt to Fidelity National Title Insurance Company in the amount of $394,914.16 was held nondischargeable for fraud and/or willful and malicious injury on March 27, 2013. [Adv. Pro. No. 12-90274, Docket no. 40].

[8] According to the Trustee's Interim Report [11-06339, Docket no. 333], the trustee did not sell or otherwise dispose of any personal property identified in the damages claim. Instead, she has noted that those items are of no value to the estate, that the items are fully administered, and most likely would have been abandoned those assets already but for the pending adversary proceedings preventing closure of the case. The related real property was ultimately abandoned by the trustee, and stay relief given to the secured creditor.

14

estate. The notice was clear that the transfer was being made to Brenda Wilhoite, the 51% owner of Bren. [11-06339 Docket no. 216].

The Court records reflect that Mr. Wilhoite received notice of the proposed sale. He did not object, and a court order was entered on June 27, 2012, authorizing the sale of the 49% ownership. [11-06339 Docket no. 234] He cannot now complain that the trustee breached her fiduciary duty in selling this asset for a diminished price when he did not even object to the sale in a timely manner when he had a chance. He did not appeal the sale order. He did not ask that the Order be set aside.

Call it res judicata, call it waiver, or call it "implied consent." Under any theory, Mr. Wilhoite is now raising issues that should have been raised at the time the trustee sold the 49% ownership interest in Bren Instruments. The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the "parties or their privies from relitigating issues that were or could have been raised" in a prior action. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). As stated by the Sixth Circuit, res judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir. 1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Each of these elements is met in this case. Indeed, if Mr. Wilhoite believed that the asset was being sold for an under-market price, that is precisely the type of objection that should have been raised at the time of the sale.[9]

Waiver is the intentional, voluntary relinquishment of a known right, and "there must be clear, unequivocal and decisive acts of the party" to demonstrate it. *American Bank, FSB v. Cornerstone Community Bank*, 733 F.3d 609, 615 (6th Cir. 2013); *Collins v. Summers Hardware & Supply Co.,* 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002). Mr. Wilhoite waived any right to challenge the validity of the sale of the 49% ownership interest (assuming, he is even a surplus debtor) by his inaction during the sale of the asset by the trustee. *See* (In *re Miller*, 442 B.R. 621, 636

---

[9] There is absolutely no question that Mr. Wilhoite was an active participant as a *pro se* litigant throughout his bankruptcy. The Court's extensive review of the history of this case reveals Mr. Wilhoite's attention to the various pending matters over the course of time, yet, when the sale of his former interest in Bren Instruments occurred, Mr. Wilhoite was silent.

15

(Bankr. W.D. Mich. 2011) *quoting* 47 Am. Jur. 2d Judicial Sales § 228 (2010). ("The conduct upon which waiver or estoppel may be predicated includes acquiescence, silence and inaction by a person having, or chargeable with, knowledge of the facts on which the challenge to the validity of the sale is grounded ... [including] allowing the sale to proceed without objection, attending the sale but doing nothing to protect one's interests, accepting all steps taken in the proceeding, failing to file exception to the report of the officer conducting the sale ... or on silence and inaction at successive stages of the proceedings."); *In re Ungar*, 2012 WL 5505784 (Bankr. N.D. Ohio 2012) ("By failing to object to Trustee's Notice [of Sale]… Debtor waived his opportunity to object…"); *In re Bunting Bearings*, 331 B.R. 313, 318 (Bankr. N.D. Ohio 2005) (finding an objection to certain charges assessed by 363 sale order were issues which should have been raised at the time of sale, not after, and that "the doctrine of waiver cannot be overlooked."); *In re Level Propane Gases, Inc.*, 304 B.R. 775, 778 (Bankr. N.D. Ohio 2004) (holding no standing to appeal a sale order and that "[t]he prerequisites to being an aggrieved person include attendance at the hearing and objection.").

Mr. Wilhoite's lack of objection could also be viewed as implied consent to the trustee's sale. While the consent issue normally arises in connection with lien holders, the applicable law provides further general support for the fundamental principle that the time to raise an objection is at the time of sale, not later. In the context of this case, implied consent pursuant to 11 U.S.C. § 363 is another moniker for the equitable principles at work here.[10]

---

[10] The Trustee is authorized by section 363(b) to sell estate property outside "the ordinary course of business." Under certain conditions, section 363(f) permits such a sale to be made "free and clear of any interest in such property of an entity other than the estate." These conditions are that: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f). The only possible issues Mr. Wilhoite could have raised at the time of the sale relate to the stock's sale price or Mr. Wilhoite's consent – to the extent he had any argument that his consent was required. He raised neither, and his failure to object to the properly noticed sale or to appeal the sale order implies waiver, consent, or is grounds for estoppel or res judicata. Given adequate notice, failure to object to a § 363 sale has been found to constitute *consent* per § 363(f)(2) to a "free and clear" sale of the nonobjector's interests in property being sold. *See, e.g., In re Christ Hospital*, 502 B.R. 158 (Bankr. D.N.J. 2013); *FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 286 (7th Cir.2002); *In re Tabone, Inc.,* 175 B.R. 855, 858 (Bankr. D.N.J.1994); *In re Elliot,* 94 B.R. 343, 345–46 (Bankr. E.D.Pa. 1988). It is not necessary for this Court to determine the extent to which the "implied consent" theory should be used in a more typical case. Here it is sufficient to note that the concept supports the other equitable theories that govern this situation.

Finally, on the point of proximate cause of damages, many of Mr. Wilhoite's allegations simply are illogical in light of the business structure of Bren Instruments. The trustee was never in control of Bren Instruments, as she was always the minority shareholder because that is what Mr. Wilhoite was prior to filing.[11] As a minority shareholder, the trustee never held the power to "close down" Bren Instruments and never had the authority to "fire all the employees," as alleged by Mr. Wilhoite.[12] In simple terms, the trustee, no matter how much Mr. Wilhoite dislikes her selling of the estate assets, was not, as a matter of corporate governance, the decision maker on matters related to Bren Instruments. Mr. Wilhoite's desire to make the trustee the scapegoat, as the successor to his minority interest, does not change that his estranged wife was the majority shareholder who purchased the minority interest without any objection from Mr. Wilhoite or any other creditor.

In summary, as it relates to the proximate cause issue, Mr. Wilhoite's amended complaint asserts claims that either he has no right to assert or that are legally precluded due to his failure to object to the sale of the business. Therefore, even if he had otherwise alleged proper grounds for breach of fiduciary duty, the damages he claims do not meet the proximate cause test.

## CONCLUSION

The amended complaint does not support standing, a fiduciary duty owed to Mr. Wilhoite, any breach of a fiduciary duty if one even existed, or damages proximately caused by such alleged breach. His amended complaint is insufficient on each and every allegation. Thus, the Court will enter an appropriate order granting the trustee's motion to dismiss because Mr. Wilhoite's amended complaint fails to state a claim for relief that can be granted under Federal Rule of Civil Procedure 12(b)(6).

---

[11] At some points Mr. Wilhoite claims to be a 25% shareholder, and others a 49% shareholder, but under any scenario, he has never alleged that he was the majority shareholder.

[12] Mr. Wilhoite also seems confused about the role of fiduciary duties in this setting. As a minority shareholder, it was not the trustee that took on fiduciary obligations relating to Bren Instruments. *Intertherm, Inc. v. Olympic Homes Systems, Inc.*, 569 S.W.2d 467 (Tenn. Ct. App., 1978) (holding a majority shareholder has a strong duty "not to conduct affairs to the unfair detriment of others, such as minority shareholders or creditors, who also have legitimate interests in the corporation but lack the power of the fiduciary."). It is axiomatic that controlling shareholders (such as Mrs. Brenda Wilhoite) owe a fiduciary duty to the minority shareholders (such as Mr. Wilhoite/the Chapter 7 Trustee). *McRedmond v. Estate of Marianelli*, 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000). In applying that fiduciary duty to the minority shareholders, the minority shareholders are protected, but the minority shareholder is not in charge, has no controlling veto power over the majority shareholder's decisions, and therefore, cannot control the corporation.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.